## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DELTA EADY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL NO. 02-1225-MJR** |
| | ) | |
| **KATHLEEN H. SAWYER,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff, formerly an inmate in the Federal Correctional Institution in Greenville, Illinois, brings this action for alleged violations of his constitutional rights by persons acting under the color of federal authority. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Plaintiff previously was granted leave to proceed *in forma pauperis*, and he has tendered his initial partial filing fee as ordered.

The complaint consists of 225 enumerated paragraphs spanning 44 pages, which clearly explain Plaintiff's indignation and outrage over his treatment within the Bureau of Prisons ("BOP"). Over the next 31 pages he then sets forth his 30 separate claims against 47 individual defendants; each claim is discussed in detail below, but the gist of many of his claims can be distilled in a concise manner. The Court discerns the following scenario: in October 2000, Plaintiff was assigned to yard crew #4 at Greenville. That yard crew was "mainly for inmates who are medically restricted but who can perform light work duties" and they worked from 6:30 AM to 10:30 AM on Fridays, Saturdays and Sundays. Apparently Plaintiff suffers from some unspecified medical condition that earned him a medical permit to avoid long periods of standing. On several occasions, Plaintiff's

crew returned to find that the dining hall had closed prior to their arrival, resulting in no breakfast for them on that day.  Plaintiff complained about this situation, and he then filed a grievance.  In Plaintiff's mind, every adverse incident that has happened to him since that time has been due to a vast conspiracy of retaliation against him for his complaints regarding these missed breakfasts (hereinafter, "the dining hall incident"); virtually every employee in the BOP allegedly was a participant in this conspiracy.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides, in pertinent part:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.  An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  After evaluating Plaintiff's claims individually, the Court finds it appropriate to exercise its authority under Section 1915A to dismiss those claims that are frivolous before allowing Plaintiff to proceed with his remaining claims.  *See also House v. Belford*, 956 F.2d 711, 718-19 (7th Cir. 1992).

## SPECIFIC CLAIMS

As stated above, the complaint consists of 225 enumerated paragraphs of specific allegations, followed by 31 pages setting forth 30 separate claims.  Each of these 30 claims specifically incorporates the allegations contained in just a few of the enumerated paragraphs.  Because Plaintiff

- 2 -

has taken such pains to set forth precisely his 30 claims in such a detailed manner, the Court and all parties will *only* consider the allegations incorporated into these 30 specific claims. Allegations contained in other enumerated paragraphs that have not been specifically incorporated into one of these 30 claims shall be considered merely background material.[1] With that preface, the Court will now address each of those 30 claims.

## COUNT 1

Plaintiff's first claim specifically incorporates the "actions of the Defendants stated in paragraphs #20 and 21." In those paragraphs, Plaintiff alleges that Lashbrook, Delgado and Perfetti retaliated against him for the dining hall incident; on November 16, 2000, they reassigned him to yard crew #1, a crew that performed more strenuous work than yard crew #4. Plaintiff alleges that such reassignment was done in violation of his constitutional rights under the First, Fifth and Eighth Amendments. He also claims that such actions constitute the tort of negligence.

The Fifth Amendment claim has no merit – Plaintiff has no procedural due process right in his job assignment. *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000); *Wallace v. Robinson*, 940 F.2d 243, 247 (7th Cir. 1991), *cert. denied*, 503 U.S. 961 (1992). Further, he makes no allegations regarding any specific medical condition that would suggest a violation of his rights under the Eighth Amendment. *See generally Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994). Likewise, his negligence claim has no merit, as a defendant can never be held liable for negligence under civil rights law. *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Zarnes v. Rhodes*, 64 F.3d 285, 290 (7th Cir. 1995).

---

[1] In particular, the enumerated paragraphs ***not*** incorporated into any of Plaintiff's 30 separate claims include ¶¶ 1-19, 22-38, 43-47, 67, 72-75, 87, 103, 106, 114-116, 134-138, 148, 153-157, 163-175, 184-188, 201-206, 221, and 224-225 (Doc. 1, pages 7-44).

His First Amendment claim is that his job assignment was changed in retaliation for his complaints regarding the missed breakfasts.  Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement.  *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt*, 224 F.3d at 618-19; *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988).  Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer."  *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).

Applying these standards to the allegations in the complaint, the Court is unable to dismiss Plaintiff's retaliation claim against Lashbrook, Delgado and Perfetti at this point in the litigation.

## COUNT 2

This claim specifically incorporates the "actions of the Defendants stated in paragraphs 39-42."  In those paragraphs, Plaintiff alleges that on November 20, 2000, he received incident reports from Mueller and Grapperhaus in retaliation for the dining hall incident.  Hughs conducted only a partial investigation of the reports.  Plaintiff further alleges that Gilkey, Osborn, Meaders, Hughston, Lashbrook, Delgado, Perfetti, Hughs, Nelson, Mueller and Grapperhaus somehow conspired to keep him in the S.H.U.  As in Count 1, he claims that these actions violate his rights under the First, Fifth and Eighth Amendments, and also constitute the tort of negligence.

The negligence claim is without merit, as is the Eighth Amendment claim; allegations regarding disciplinary action do not give rise to "deliberate indifference" claims under the Eighth Amendment.  As for his Fifth Amendment claim, he must show that the government deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law.  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  In the instant claim, Plaintiff claims that he was

- 4 -

unjustly confined to the Special Housing Unit ("SHU"), also known as the segregation unit. However, he has no protected liberty interest in remaining in general population.  *See, e.g., Sandin v. Conner*, 515 U.S. 472, 483 (1995); *Thomas v. Ramos*, 130 F.3d 754, 760-62 (7th Cir. 1997) (70 days in segregation not atypical and significant hardship); *Wagner v. Hanks,* 128 F.3d 1173, 1175-76 (7th Cir. 1997) (rejecting claim that prisoner was improperly held one year in disciplinary confinement); *Whitford v. Boglino*, 63 F.3d 527, 533 (7th Cir. 1995) (six months in segregation not atypical and significant hardship).  Even if Plaintiff has such a protected liberty interest, he fails to allege that he was denied any of the procedural protections required by the Supreme Court.  *See generally Wolff v. McDonnell*, 418 U.S. 539, 563-72 (1974).  These claims are thus dismissed from this action with prejudice.

His First Amendment claim is that he received these disciplinary tickets from Mueller and Grapperhaus in retaliation for the dining hall incident.  Because prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement, the Court is unable to dismiss this retaliation claim against Mueller and Grapperhaus at this point in the litigation.  However, Defendants Gilkey, Osborn, Meaders, Hughston, Lashbrook, Delgado, Perfetti, Hughs and Nelson are dismissed with prejudice from Count 2.

## COUNT 3

This claim specifically incorporates the "actions of the Defendants stated in paragraphs 48-53."  In those paragraphs, Plaintiff alleges that on November 29, 2000, while removing Plaintiff from his cell, Kieffer applied the handcuffs too tightly to Plaintiff's wrists.  Plaintiff complained to Gordon, but Gordon failed to loosen the handcuffs.  After Plaintiff was moved out of his cell,

Kieffer, Gordon, Gregory[2] and Jeter confiscated several grievance forms that Plaintiff had prepared against other staff members.  Plaintiff alleges that these actions were taken in retaliation for the dining hall incident, in violation of his rights under the First, Fifth and Eight Amendments.[3]

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under Section 1983.  *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000).  "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 6-7.  An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action. . . . [the] prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"  *Id.* at 9-10; *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

In this case, the Court finds that tight handcuffs is just such a *de minimis* use of force that does not implicate the Eighth Amendment.  Therefore, Plaintiff's Eighth Amendment claim against Kieffer and Gordon regarding use of handcuffs is dismissed from this action with prejudice.

---

[2]  Gregory is not listed as a defendant in the caption or jurisdictional portion of the complaint; therefore, the Court does not consider him a party to this action.

[3]  Plaintiff also alleges the tort of negligence, as he does with each of his 30 claims.  Suffice it to say, once again, that negligence is not actionable under civil rights law.

As for the confiscation of his paperwork, the only constitutional right that might be implicated by these allegations is Plaintiff's right, under the Fifth Amendment, to be free from deprivations of his property by government actors without due process of law.  To state a claim under the due process clause of the Fifth Amendment, Plaintiff must establish a deprivation of liberty or property *without due process of law*; if the government provides an adequate remedy, Plaintiff has no civil rights claim.  *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy).  The Court finds that Plaintiff has (or had) an adequate post-deprivation remedy in an action for damages under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-2680, and accordingly, he has no claim under the Fifth Amendment.

However, as discussed previously, prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement.  Therefore, the Court is unable to dismiss the First Amendment retaliation claim against Kieffer, Gordon and Jeter at this point in the litigation.

**C**OUNT **4**[4]

This claim specifically incorporates the "actions of the Defendants stated in paragraphs #54-66."  In those paragraphs, Plaintiff alleges that on November 30, 2000, Gordon applied handcuffs too tightly to his wrists.  Gordon then confined Plaintiff to a small holding cell for several hours, and Kieffer merely stood by and watched.  Apparently Plaintiff filed a grievance, but he claims that Gilkey, Osborn, Meaders, Hughston, Ruble and Jeter "conspired to destroy [it]" in order to cover up Gordon's actions. Gordon then wrote an allegedly false disciplinary ticket against Plaintiff for

---

[4] This claim begins on page 47 of the complaint, although Plaintiff has omitted the heading "Fourth Claim for Relief" that would be consistent with the organization of his other claims.

unspecified charges, which was only partially investigated by Lt. Doe.  Plaintiff further alleges that

Sawyer, Watts, Hershberger, Gilkey, Osborn, Meaders, Hughston, Ruble, Jeter, Lashbrook, Kocevor

and Lt.  Doe conspired with Gordon with regards to this disciplinary ticket.

Again, Plaintiff's negligence claim is without merit.  Further, as discussed above in Count

3, handcuffs applied too tightly is a *de minimis* use of force that does not give rise to an Eighth

Amendment claim.  Therefore, Plaintiff's Eighth Amendment claim regarding use of handcuffs is

dismissed from this action with prejudice.

Finally, regarding the allegedly false disciplinary ticket, Plaintiff provides no information

about it – nothing about the charges against him, nothing about any penalty that he suffered as a

result.  *See generally Sandin*, 515 U.S. at 483.  Nor does he allege the deprivation of any procedural

due process protections.  *See generally Wolff*, 418 U.S. at 563-72.  Therefore, he has not presented

a viable Fifth Amendment claim regarding this disciplinary ticket, and this claim is also dismissed

from this action with prejudice.

## COUNT 5

This claim specifically incorporates the "actions of the Defendants stated in paragraphs 68-

71."  In those paragraphs, Plaintiff alleges, first, that on December 7, 2000, Gordon, Bunner and

Gregory drew a derogatory picture of Plaintiff and attached it to his personal property.  The Court

is unaware of any constitutional provision that would protect Plaintiff from being represented in a

caricature drawn by correctional officers, even if that drawing were less than flattering.  This claim

is patently frivolous, and it is dismissed from this action with prejudice.

Plaintiff also alleges that Gordon later placed him in a cell lacking a pillow and mattress,

then refused to bring those items to him.        For a claim involving conditions of confinement in a

prison, two elements are required to establish violations of the Eighth Amendment's cruel and unusual punishments clause. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer*, 511 U.S. at 834. The second requirement is a subjective element – establishing a defendant's culpable state of mind. *Id.*

Although Plaintiff may have experienced some discomfort, he makes no allegations that he suffered any physical harm due to a temporary lack of a mattress or pillow. 42 U.S.C. §1997e(7)(e). *See generally Harris v. Fleming*, 839 F.2d 1232 (7th Cir. 1988). Therefore, this claim is also dismissed from this action with prejudice.

## COUNT 6

This claim specifically incorporates the "actions of the Defendants stated in paragraphs 76-86." In those paragraphs, Plaintiff alleges that on December 15, 2000, Hughston, Jeter and Safety Manager Doe failed to provide adequate heating in the SHU. In particular, he states that the end cells of the SHU are known to be cold, and that Hughston deliberately assigned him to one of those cells in retaliation for the dining hall incident, among other numerous grievances that he had filed. In addition, he claims he was without toilet paper for four days, his cell had no hot running water, and he was issued clothing that was unsanitary by Gilkey, Osborn, Meaders, Quintana, Jeter, Hughston and Ruggeri. He further alleges that Gilkey, Osborn, Meaders, Hughston, Jeter, Ruggeri and Horzewski "cleverly punished and artfully terrorized [him]" by keeping him confined to the SHU as long as possible.

Prisoners have an Eighth Amendment right to adequate shelter, including a right to protection from cold. *See Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997). To assess whether

cold cell temperatures constitute cruel and unusual punishment, courts must consider factors including "the severity of the cold; its duration; whether the prisoner has alternative means to protect himself from the cold; the adequacy of such alternatives; as well as whether he must endure other uncomfortable conditions as well as cold." *Id.* at 644; *see also Palmer v. Johnson*, 193 F.3d 346 (5th Cir. 1999) (finding that exposure to extreme cold for 17 hours could constitute Eighth Amendment violation); *Henderson v. DeRobertis*, 940 F.2d 1055, 1058 (7th Cir. 1991) (finding that deprivation of blankets for four days in extreme cold could constitute Eighth Amendment violation). The cold need not present an imminent threat to the inmate's health to implicate the Eighth Amendment. *See Dixon*, 114 F.3d at 642. Based on these standards, the Court is unable to dismiss Plaintiff's claim about the cold against Hughston at this point.

However, Plaintiff's allegations that Hughston, Jeter and Safety Manager Doe failed to provide adequate heat in the SHU states, at best, a claim of negligence that is not actionable under civil rights law. The same can be said about his allegations that Gilkey, Osborn, Meaders, Quintana, Jeter, Hughston and Ruggeri failed to provide him with toilet paper, hot running water, or clean clothing. Therefore, these claims are dismissed from this action with prejudice.

Finally, Plaintiff's generalized, conclusory allegations regarding the actions of Gilkey, Osborn, Meaders, Hughston, Jeter, Ruggeri and Horzewski are insufficient to sustain a constitutional claim under the Fifth or Eighth Amendment, and this claim is also dismissed with prejudice. Accordingly, Defendants Gilkey, Osborn, Meaders, Quintana, Jeter, Ruggeri, Horzewski and Safety Manager Doe are dismissed from Count 6 with prejudice.

<u>**COUNT 7**</u>

This claim specifically incorporates the "actions of the Defendants stated in paragraphs 88-101."  In those paragraphs, Plaintiff alleges that from November 16 through December 21, 2000, Gilkey, Osborn, Meaders, Lashbrook, Carney, Hughston, Jeter, Ruble, Ruggeri and Garver "conspired to discriminate and retaliate" against him "with how they may best concoct a strategem to perfect a transfer against the plaintiff."  He alleges that as a result of this conspiracy, Ruggeri and Garver falsely documented threats made against him by other inmates, thus requiring them to keep Plaintiff in the SHU.  By informing Plaintiff of these threats, which Plaintiff believed to be false, Plaintiff "began to precipitate, drifting into a state of hopelessness," and he began to think that the entire B.O.P. staff "was in cahoots against him."[5]

Although this claim of conspiracy is tenuous, at best, "it is enough in pleading a conspiracy to indicate the parties, general purpose, and approximate date."  *Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002).  *See also Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003); *Tierney v. Vahle*, 304 F.3d 734, 740 (7th Cir. 2002).  Therefore, the Court is unable to dismiss any portion of Count 7 at this point in the litigation.

<u>**COUNT 8**</u>

This claim specifically incorporates the "actions of the Defendants stated in paragraphs #102."  In that paragraph, Plaintiff alleges that on December 28, 2000, Chambers and Carney failed to provide Plaintiff with grievance forms.  However, no constitutional provision requires that Plaintiff be provided with an unlimited number of grievance forms upon demand, and the failure, or even the outright refusal, to provide him with more forms on one specific date does not give rise

---

[5]   He also fears that such claims "would be viewed by many as exaggerative and far-fetched."

to a constitutional claim.  Accordingly, this claim is dismissed from this action with prejudice.

## COUNT 9

This claim specifically incorporates the "actions of the Defendant stated in paragraph 104." In that paragraph, Plaintiff alleges that from December 21, 2000, through January 4, 2001, Bunner withheld Plaintiff's personal property from him.

The only constitutional right that might be implicated by these facts is Plaintiff's right, under the Fifth Amendment, to be free from deprivations of his property by government actors without due process of law.  To state a claim under the due process clause of the Fifth Amendment, Plaintiff must establish a deprivation of liberty or property *without due process of law*; if the government provides an adequate remedy, Plaintiff has no civil rights claim.  *Hudson, supra*, 468 U.S. at 530-36 (availability of damages remedy in state claims court is an adequate, post-deprivation remedy).  The Court finds that Plaintiff has (or had) an adequate post-deprivation remedy in an action for damages under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-2680, and he has no claim under the Fifth Amendment.  Accordingly, Count 9 is dismissed from this action with prejudice.

## COUNT 10

This claim specifically incorporates the "actions of the Defendant stated in paragraph #105." In that paragraph, Plaintiff alleges that on January 3, 2001, Robinson rejected approximately 16 grievances that Plaintiff had filed about staff misconduct.  However, Plaintiff has no constitutional right to receive his requested relief through the grievance process.  *See generally Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995); *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982).  Therefore, this claim is dismissed from this action with prejudice.

**COUNT 11**

This claim specifically incorporates the "actions of the Defendants stated in paragraphs 107-109." In those paragraphs, Plaintiff alleges that as of January 9, 2001, he had not received any response to his grievance regarding Gordon's use of excessive force (too-tight handcuffs) on November 30. Therefore, he believes that his grievance was willfully destroyed by Gordon's co-conspirators, including Gilkey, Osborn, Meaders, Hughston, Ruble, Carney and Chambers.

As stated above, Plaintiff has no constitutional right to receive a response to his grievance, timely or otherwise, favorable or otherwise. Further, the fact that he did not receive a prompt response to one particular grievance does not lead to a conclusion that the grievance was willfully destroyed by anyone. Therefore, the lack of a response does not implicate a constitutional right, and this claim is dismissed from this action with prejudice.

**COUNT 12**

This claim specifically incorporates the "actions of the Defendants stated in paragraphs 110, 111, 112, 113, 117, 118 and 119." In those paragraphs, Plaintiff alleges that on January 11, 2001, Gordon again applied handcuffs too tightly to his wrists, and Plaintiff asked Adesanya to evaluate the situation. Adesanya unsuccessfully attempted to put his finger inside the handcuffs, then advised Plaintiff that the handcuffs were "just fine."

As discussed above in Count 3 and Count 4, handcuffs applied too tightly is a *de minimis* use of force that does not give rise to an Eighth Amendment claim. Therefore, Count 12 is dismissed from this action with prejudice.

**COUNT 13**

This claim specifically incorporates the "actions of the Defendant stated in paragraphs 120-

128." In those paragraphs, Plaintiff alleges that on January 11, 2001, after Plaintiff was placed in a holding cell prior to a DHO hearing, Black conducted a search of his cell. During that search, Black read aloud to other officers the various grievances that Plaintiff had prepared against them. After the DHO hearing, Plaintiff was returned to the holding cell for several hours. Upon return to his cell, Plaintiff discovered that his legal log book and calendar had been confiscated; Plaintiff used these documents "for recording the staff members misconduct and wrongful procedures conducted."

To the extent he presents a claim regarding confiscated property, his only remedy is under the FTCA, as discussed above in Count 9. If, instead, he is attempting to present a claim that his access to the courts was thwarted, he makes no allegations of any detriment to any litigation, either planned or pending, due to confiscation of these materials. *See generally Alston v. DeBruyn,* 13 F.3d 1036, 1041 (7th Cir. 1994); *Kincaid v. Vail*, 969 F.2d 594, 603 (7th Cir. 1992), *cert. denied*, 113 S.Ct. 1002 (1993). Therefore, he has failed to state a claim upon which relief may be granted, and Count 13 is dismissed from this action with prejudice.

## COUNT 14

This claim specifically incorporates the "actions of the Defendants stated in paragraphs 129-133." In those paragraphs, Plaintiff alleges that due to cost-cutting measures authorized by Hughston, Osborn, Meaders, Gilkey and Jeter failed to provide Plaintiff and other SHU inmates with an adequate number of ink pens, shower hooks, shower curtains, envelopes, toothbrushes, cleaning supplies, razors and toilet paper.

The Court is unaware of any constitutional provision requiring that inmates be provided with a particular quantity of these amenities. Further, Plaintiff makes no allegation of how he was harmed by any perceived deficiency of these items. Therefore, he has failed to state a claim upon

which relief may be granted, and Count 14 is dismissed from this action with prejudice.

<u>**COUNT 15**</u>

This claim specifically incorporates the "actions of the Defendants stated in paragraphs 139-142." In those paragraphs, Plaintiff alleges that on January 18, 2001, he filed a grievance due to Hughston's perceived racially discriminatory practices regarding work assignments within the SHU. He further alleges that Sawyer, Watts, Hershberger, Gilkey, Osborn and Meaders tacitly condoned this practice, apparently by their collective failure to provide an appropriate response to his grievance about this matter, thus violating his rights under the First, Fifth and Eighth Amendments.

By this point it should be clear that Plaintiff has no constitutional right to receive his requested relief, or any response, to his grievances. The only other claim possibly raised here is one of racial discrimination and, to state an equal protection claim, Plaintiff must allege that a government actor has purposely treated him differently than persons of a different race. *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). In this case, Plaintiff makes no such allegations, and therefore he has failed to state a claim upon which relief may be granted. Accordingly, Count 15 is dismissed from this action with prejudice.

<u>**COUNT 16**</u>

This claim specifically incorporates the "actions of the Defendants stated in paragraphs 143-145." In those paragraphs, Plaintiff alleges that on January 22, 2001, Gregory and Perfetti failed to provide Plaintiff with his "no meat" food tray. This same allegation is made against Markham for his actions on February 1, 2001. Plaintiff further claims that these actions were the result of the conspiracy as perpetrated by Hughston, Gilkey, Meaders, Jeter, Ruggeri and Quintana.

The Court is unsure what constitutional right might be implicated by Defendants' failure to

provide Plaintiff with a no-meat tray.  Perhaps a religious belief was involved, or maybe only a personal preference to follow a vegetarian diet.  Either way, no constitutional violation occurs when an inmate is not provided with his choice of diet on one or two isolated occasions.  *See, e.g., O'Lone v. Estate of Shabazz,* 482 U.S. 342, 352 (1987) (prisoner's right to freely exercise his religious beliefs does not depend upon his ability to pursue each and every aspect of the practice of his religion); *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999) (denial of food is not a *per se* violation of the Eighth Amendment).

Therefore, Plaintiff has failed to state a claim upon which relief may be granted, and Count 16 is dismissed from this action with prejudice.

## COUNT 17

This claim specifically incorporates the "actions of the Defendants stated in paragraph #146." In that paragraph, Plaintiff alleges that on February 2, 2001, Gilkey, Osborn, Meaders, Carney, Hughston, Ruble and Nuedeck "conspired to construct a transfer" in retaliation for the many grievances Plaintiff filed.  Like his claims in Count 7, these allegations are tenuous, but "it is enough in pleading a conspiracy to indicate the parties, general purpose, and approximate date." *Walker*, 288 F.3d at1007-08.  Therefore, the Court is unable to dismiss any portion of Count 17 at this point in the litigation.

## COUNT 18

This claim specifically incorporates the "actions of the Defendants stated in paragraph #147." In that paragraph, Plaintiff alleges that from November 20, 2000, through February 14, 2001, Lashbrook, Carney, Callaballo, Chambers, Gilkey, Osborn, Meaders, Jeter and Ruggeri conspired to withhold his personal property from him.

As discussed above in Count 9 and Count 13, Plaintiff's only remedy for confiscated or lost personal property is under the FTCA.  Therefore, Count 18 is dismissed from this action without prejudice to Plaintiff pursuing a claim under the FTCA.

## COUNT 19

This claim specifically incorporates the "actions of the Defendants stated in paragraphs #149-152."  In those paragraphs, Plaintiff alleges that on March 6, 2001, Gordon kicked Plaintiff's cell door, "striking fear into the plaintiff."  Apparently Gordon and Miller did this on several other occasions.

The Court does not condone these actions as professional behavior on the part of Gordon and Miller.  However, the Constitution does not protect Plaintiff from having his door kicked on occasion.  This claim is legally frivolous, and it is dismissed from this action with prejudice.

## COUNT 20

This claim specifically incorporates the "actions of the Defendants stated in paragraphs #158-162."  On April 2, 2001, the regional office rejected Defendants' request to transfer Plaintiff. As a result, Plaintiff alleges that Gilkey, Meaders, Quintana, Carney, Hughston, Ruble, Ruggeri and Nuedeck "immediately went back to the drawing board" in order to find another way to have Plaintiff transferred out of Greenville.  As part of the plan, Gilkey allegedly directed others to investigate the "mysteriously alleged threats" against Plaintiff that were reported by Ruggeri and Garver in November.  Plaintiff remained confined to the SHU pending this investigation, which he alleges was nothing more than a stalling tactic until Defendants could "concoct a more effective stratagem" to have him transferred.

As with Count 7 and Count 17, the Court is unable to dismiss any portion of this conspiracy

claim at this point in the litigation.

## COUNT 21

This claim specifically incorporates the "actions of the Defendants stated in paragraphs #176-177." In those paragraphs, Plaintiff alleges that on May 1, 2001, Walters and Langawski conspired to retaliate against Plaintiff and other SHU inmates who were designated as protective custody ("PC") status. Plaintiff states that all PC inmates were moved to one end of the SHU range, which apparently implied to other SHU inmates that they were "snitches." He further alleges that Defendants then wrote each inmate's name and other identifying information on the cell door with a red marker.

No constitutional right is implicated by grouping the PC inmates together in one section of the segregation unit. In fact, it could be argued that inmates requiring protective custody status should be separated general population inmates within the segregation unit, as the purpose of protective custody is exactly that – separating certain inmates from the general population for their own protection. Further, the allegation that Plaintiff *and all other* PC inmates were moved together contradicts Plaintiff's assertion that Defendants singled him out for retaliatory treatment.

Plaintiff has failed to present a viable constitutional claim, and Count 21 is therefore dismissed from this action with prejudice.

## COUNT 22

This claim specifically incorporates the "actions of the Defendants stated in paragraphs 178-182." In those paragraphs, Plaintiff alleges that on May 17, 2002, he was released from the SHU and returned to general population. Less than a week later, he was sent back to the SHU pending investigation of charges that he encouraged other inmates to riot. He alleges that these charges were

false, and were the result of the retaliatory conspiracy between Gilkey, Meaders, Quintana, Ruble, Hughston and Carter to find another way to have Plaintiff transferred from Greenville.

To the extent that Plaintiff may be challenging this disciplinary ticket, he provides no information regarding any penalty that he suffered as a result. Because he makes no allegation that he suffered the loss of any protected liberty or property interest, he has not presented a viable constitutional claim regarding this disciplinary ticket.

However, as with Count 7, Count 17 and Count 20, at this point in the litigation the Court is unable to dismiss the portion of this claim which alleges that Defendants concocted this disciplinary ticket as part of the overall conspiracy to transfer him in retaliation for his grievances.

**COUNT 23**

This claim specifically incorporates the "actions of the Defendant stated in paragraph #183." In that paragraph, Plaintiff alleges that on May 23, 2001, Walters assigned Plaintiff to an upper bunk in the SHU, demonstrating deliberate indifference to his serious medical needs.

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106. *See also Jones v. Simek,* 193 F.3d 485, 489 (7th Cir. 1999); *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996), *cert. denied,* 519 U.S. 897 (1996).

An allegation that Walters assigned him to an upper bunk does not suggest an Eighth Amendment violation, particularly when Plaintiff omits any reference to what serious medical

condition he suffered that might be adversely affected by such a bunk assignment. Therefore, he has failed to state a claim upon which relief may be granted, and Count 23 is dismissed from this action with prejudice.

## COUNT 24

This claim specifically incorporates the "actions of the Defendants stated in paragraphs 189-192." In those paragraphs, Plaintiff alleges that on June 27, 2001, Hughston and Ruble coerced other inmates into making false allegations against Plaintiff regarding Plaintiff's efforts to instigate a riot; Ruble then filed an incident report against Plaintiff. Two days later, Kocevor and Callaballo conducted a partial investigation of the charges, but no other information is provided regarding this incident.

Plaintiff makes no allegations that he was deprived of any protected liberty or property interest as the result of this incident, nor does he allege that he was denied any procedural due process protections required by the Fifth Amendment. Therefore, he has failed to state a claim upon which relief may be granted, and Count 24 is dismissed from this action with prejudice.

## COUNT 25

This claim specifically incorporates the "actions of the Defendants stated in paragraphs 193-197." In those paragraphs, Plaintiff alleges that on June 29, 2001, Pottios and Wals rejected Plaintiff's request to review case law and other legal materials from the education department. On July 3, 2001, Gilkey, Meaders, Hughston, Horzewski and Gordon then allegedly conspired to separate Plaintiff and his cellmate, Cole, in order to prevent them from assisting one another in their litigation efforts. As part of that conspiracy, Hughston order that Plaintiff and Cole not be permitted to go to the law library together.

- 20 -

The Seventh Circuit uses a two-part test to decide if prison administrators have violated the right of access to the courts. *Smith v. Shawnee Library Sys.*, 60 F.3d 317 (7th Cir. 1995); *Jenkins v. Lane*, 977 F.2d 266, 268 (7th Cir. 1992). First, the prisoner must show that prison officials failed "to assist in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Jenkins,* 977 F.2d at 268 (*quoting Bounds v. Smith*, 430 U.S. 817, 828 (1977)). Second, he must be able to show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation." *Alston, supra,* 13 F.3d at 1041. That means that a detriment must exist, a detriment resulting from illegal conduct that affects litigation. It does not mean that any delay is a detriment. *Kincaid, supra*, 969 F.2d at 603. Regardless of the length of an alleged delay, a prisoner must show actual substantial prejudice to specific litigation. *Id.*

Plaintiff makes no allegations that any of his litigation efforts were thwarted due to one day's lack of access to legal materials. Further, Plaintiff has no constitutional right to assist other inmates with their litigation. Therefore, he has failed to state a claim upon which relief may be granted, and Count 25 is dismissed from this action with prejudice.

## COUNT 26

This claim specifically incorporates the "actions of the Defendants stated in paragraphs 198-200." In those paragraphs, Plaintiff alleges that as of July 6, 2001, Sawyer, Hershberger, Gilkey, Meaders and Quintana conspired to provide an inadequate medical care system at Greenville. He further alleges that Doe, Lebore, Adesanya and Leone failed to provide him with adequate medical treatment for skin problems on his feet.

As discussed above in Count 23, "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle*, 429 U.S. at 104; *Farmer*, 511 U.S. 825. However, in this claim, Plaintiff merely alleges that Defendants "fail[ed] to provide adequate medical treatment and care, regarding the skin problems with his feet." Such a claim sounds in negligence, which is not actionable under the Eighth Amendment. *See generally Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997); *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996); *Sellers v. Henman*, 41 F.3d 1100, 1103 (7th Cir. 1994). Therefore, Plaintiff has failed to state a claim upon which relief may be granted, and Count 26 is dismissed from this action with prejudice.

## COUNT 27

This claim specifically incorporates the "actions of the Defendants stated in paragraphs 207-217." In those paragraphs, Plaintiff alleges that on August 16, 2001, he appeared before the DHO regarding Ruble's charges that Plaintiff had encouraged other inmates to riot. The hearing was then postponed pending a rewriting of the incident report, which Horzewski delivered to Plaintiff at his cell. On August 17, the hearing was reconvened; Plaintiff was found guilty by Whitehouse, and Plaintiff was then moved by Gordon to the disciplinary segregation range in the SHU. When his personal property was later brought to him, Plaintiff discovered that some hygiene items were missing, as were "a large amount of his legal materials, religious materials, postal stamps and personal property." Plaintiff alleges that Gordon deliberately confiscated these materials to thwart his litigation efforts, in furtherance of the overall conspiracy to retaliate against him for his persistent use of the grievance system.

Several potential claims are presented by these allegations. First is Plaintiff's claim that he

was somehow denied due process with the disciplinary proceeding.  When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon, supra*, 494 U.S. at 125.

In the instant case, Plaintiff alleges that he was placed in disciplinary segregation for an unspecified time in violation of his right to procedural due process.  However, as previously discussed in Count 2, he has no protected liberty interest in remaining in general population.  *See, e.g., Thomas*, 130 F.3d at 760-62; *Wagner,* 128 F.3d at 1175-76; *Whitford*, 63 F.3d at 533.  Therefore, he has not presented a viable constitutional claim against Ruble, Horzewski and Whitehouse regarding the disciplinary proceeding.

To the extent he presents a claim regarding confiscated property against Gordon, his only remedy is under the FTCA, as discussed above in Count 9.  If, instead, he is attempting to present a claim that his access to the courts was thwarted, he makes no allegations of any detriment to any litigation, either planned or pending, due to confiscation of these materials.  *See generally Alston,* 13 F.3d at 1041; *Kincaid*, 969 F.2d at 603.  Therefore, he has failed to state a claim upon which relief may be granted, and his claims regarding this missing property dismissed from this action without prejudice to pursuing those claims under the FTCA.

In summary, Count 27 is dismissed from this action with prejudice.

**COUNT 28**

This claim specifically incorporates the "actions of the Defendants stated in paragraphs 218-220."  On September 10, 2001, Plaintiff was transferred to F.C.I. Three Rivers.  He alleges that this transfer was the result of the conspiracy between Sawyer, Hershberger, Gilkey, Meaders, Quintana,

Hughston, Carter, Branford and Watts.

As with Count 7, Count 17, Count 20 and Count 22, the Court is unable to dismiss this conspiracy claim at this point in the litigation.

## COUNT 29

This claim specifically incorporates the "actions of the Defendants stated in paragraph #222." In that paragraph, Plaintiff alleges that Sawyer, Watts and Hershberger failed to properly supervise and discipline the employees at F.C.I. Greenville.   In essence, this is a claim of negligence. However, a defendant can never be held liable for negligence under civil rights law.  *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Zarnes v. Rhodes*, 64 F.3d 285, 290 (7th Cir. 1995). Furthermore, to the extent Plaintiff may be alleging that Defendants are liable for the actions of their employees and subordinates, "[t]he doctrine of respondeat superior does not apply to § 1983 actions; thus to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.' "  *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001), *quoting Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001).  *See also Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *Duncan v. Duckworth*, 644 F.2d 653, 655-56 (7th Cir. 1981).

Accordingly, this claim is dismissed from this action with prejudice.

## COUNT 30

This claim specifically incorporates the "actions of the Defendants stated in paragraph #223." In that paragraph, Plaintiff alleges that Sawyer, Watts, Hershberger, Robinson and Gilkey "conspired to cleverly construct deceitful circumventive administrative remedy tactics to encumber

[him] from exercising the administrative remedy process" against B.O.P. employees.  This is a creatively crafted statement that has no substance.  Even reading this statement in the context of the entire complaint, there is nothing alleged in the complaint to suggest that Plaintiff was thwarted in his attempts to avail himself of the administrative remedy process.  Quite the contrary, in fact; it appears that Plaintiff availed himself of the grievance process with unfailing frequency, so it can hardly be said that Defendants encumbered his free exercise of these procedures.  This claim is legally frivolous, and it is dismissed from this action with prejudice.

## OTHER NAMED INDIVIDUALS

In the complaint, Plaintiff lists Ronald G. Thompson and D. McDaniel as defendants, as well as an unknown hospital administrator.  However, the statement of claim does not include any allegations against these defendants, and "[a] plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."  *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998).  *See also Crowder v. Lash,* 687 F.2d 996, 1006 (7th Cir. 1982) (director of state correctional agency not personally responsible for constitutional violations within prison system solely because grievance procedure made him aware of it and he failed to intervene).  Therefore, Thompson, McDaniel, and the Unknown Hospital Administrator are dismissed from this action with prejudice.

Plaintiff also mentions the following individuals in his complaint – Bobbit, Mason, Gregory, McDonald, Jett, Hatcher, Leone and Baldridge.  None of these individuals is listed as a defendant; therefore, the Court does not consider any of these individuals to be a party to this action.

## SURVIVING CLAIMS

For clarity, the following claims are the *only* claims that will proceed from this point;

Defendants need not respond to any other allegations contained in the complaint.

**COUNT 1:**   Against Lashbrook, Delgado and Perfetti for changing his job assignment in retaliation for the dining hall incident;

**COUNT 2:**   Against Mueller and Grapperhaus for writing disciplinary tickets in retaliation for the dining hall incident;

**COUNT 3:**   Against Kieffer, Gordon and Jeter for confiscating his grievances in retaliation for the dining hall incident;

**COUNT 6:**   Against Hughston for deliberately exposing him to extremely cold conditions, in retaliation for his grievances;

**COUNT 7:**   Against Gilkey, Osborn, Meaders, Lashbrook, Carney, Hughston, Jeter, Ruble, Ruggeri and Garver for conspiring to transfer him away from Greenville in retaliation for his grievances;

**COUNT 17:**   Against Gilkey, Osborn, Meaders, Carney, Hughston, Ruble and Nuedeck for conspiring to transfer him away from Greenville in retaliation for his grievances;

**COUNT 20:**   Against Gilkey, Meaders, Quintana, Carney, Hughston, Ruble, Ruggeri and Nuedeck for conspiring to transfer him away from Greenville in retaliation for his grievances;

**COUNT 22:**   Against Gilkey, Meaders, Quintana, Ruble, Hughston and Carter for conspiring to transfer him away from Greenville in retaliation for his grievances; and

**COUNT 28:**   Against Defendants Sawyer, Hershberger, Gilkey, Meaders, Quintana, Hughston, Carter and Branford for conspiring to transfer him away from Greenville in retaliation for his grievances.

## DISPOSITION

**IT IS HEREBY ORDERED** that **COUNT 4, COUNT 5, COUNT 8, COUNT 9, COUNT 10, COUNT 11, COUNT 12, COUNT 13, COUNT 14, COUNT 15, COUNT 16, COUNT 19, COUNT 21, COUNT 23, COUNT 24, COUNT 25, COUNT 26, COUNT 27, COUNT 29** and **COUNT 30** are **DISMISSED** from this action with prejudice.

**IT IS FURTHER ORDERED** that the claims regarding confiscation of personal property in **COUNT 9, COUNT 13, COUNT 18** and **COUNT 27** are **DISMISSED** from this action without prejudice to Plaintiff's pursuit of those claims under the Federal Tort Claims Act.

**IT IS FURTHER ORDERED** that, as discussed above, certain portions of **COUNT 3** and **COUNT 6** are **DISMISSED** from this action with prejudice.  Likewise, **ALL NEGLIGENCE CLAIMS** are **DISMISSED** from this action with prejudice.

**IT IS FURTHER ORDERED** that Defendants **ADESANYA, BLACK, BUNNER, CALLABALLO, CHAMBERS, FLETCHER, HORZEWSKI, HUGHS, KOCEVOR, LANGAWSKI, LEBORE, MARKHAM, McDANIEL, MILLER, NELSON, POTTIOS, ROBINSON, THOMPSON, UNKNOWN HOSPITAL ADMINISTRATOR, UNKNOWN LIEUTENANT JOHN DOE, UNKNOWN SAFETY MANAGER JAMES DOE, WALS, WALTERS** and **WHITEHOUSE** are **DISMISSED** from this action with prejudice.

**IT IS FURTHER ORDERED** that Plaintiff shall complete and submit a USM-285 form for Defendants **BRANFORD, CARNEY, CARTER, DELGADO, GARVER, GILKEY, GORDON, GRAPPERHAUS, HERSHBERGER, HUGHSTON, JETER, KIEFFER, LASHBROOK, MEADERS, MUELLER, NUEDECK, OSBORN, PERFETTI, QUINTANA, RUBLE, RUGGERI, SAWYER, WATTS**, the **BUREAU OF PRISONS**, the **UNITED STATES**

- 27 -

**ATTORNEY for the SOUTHERN DISTRICT of ILLINOIS** and **the ATTORNEY GENERAL of the UNITED STATES** within **THIRTY (30) DAYS** of the date of entry of this Memorandum and Order.  The Clerk is **DIRECTED** to send Plaintiff **26** USM-285 forms with Plaintiff's copy of this Memorandum and Order.  **Plaintiff is advised that service will not be made on a defendant until Plaintiff submits a properly completed USM-285 form for that defendant.**

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for Defendants **BRANFORD, CARNEY, CARTER, DELGADO, GARVER, GILKEY, GORDON, GRAPPERHAUS, HERSHBERGER, HUGHSTON, JETER, KIEFFER, LASHBROOK, MEADERS, MUELLER, NUEDECK, OSBORN, PERFETTI, QUINTANA, RUBLE, RUGGERI, SAWYER** and **WATTS**.  The Clerk shall also prepare a *summons* for the **BUREAU OF PRISONS**, the **UNITED STATES ATTORNEY FOR THE SOUTHERN DISTRICT OF ILLINOIS** and the **ATTORNEY GENERAL OF THE UNITED STATES**. The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on Defendants **BRANFORD, CARNEY, CARTER, DELGADO, GARVER, GILKEY, GORDON, GRAPPERHAUS, HERSHBERGER, HUGHSTON, JETER, KIEFFER, LASHBROOK, MEADERS, MUELLER, NUEDECK, OSBORN, PERFETTI, QUINTANA, RUBLE, RUGGERI, SAWYER** and **WATTS** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure, and on the **BUREAU OF PRISONS, UNITED STATES ATTORNEY FOR THE SOUTHERN DISTRICT OF ILLINOIS** and the

- 28 -

**ATTORNEY GENERAL OF THE UNITED STATES**, Washington, D.C., pursuant to Rule 4(I) of the Federal Rules of Civil Procedure.  For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form.

With respect to former employees of Bureau of Prisons who no longer can be found at the work address provided by Plaintiff, the Bureau of Prisons shall furnish the Marshal with the defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal.  Address information obtained from the B.O.P. pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received.  If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant.  Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required.  Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the

- 29 -

defendant shows good cause for such failure.

Plaintiff  is **ORDERED** to serve upon Defendants or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court.  He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel.  Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts.  This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.

**IT IS SO ORDERED.**

**DATED this 12th day of September, 2005.**

s/ Michael J. Reagan _____
**MICHAEL J. REAGAN**
**United States District Judge**

- 30 -