IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DELTA L. EADY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. **02-1225-MJR** |
| ) | |
| **BUREAU of PRISONS, et al.,** ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

**PROUD, Magistrate Judge:**

This Report and Recommendation is respectfully submitted to United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§636(b)(1)(B) and (C).

Before the Court is Defendant Hughston's Motion for Summary Judgment. **(Doc. 151)**. The motion includes a supporting brief and exhibits. Plaintiff filed a response at **Doc. 159.**

### Nature of Plaintiff's Claim

Delta Eady is an inmate in the custody of the Bureau of Prisons. He filed suit on December 10, 2002, for violation of his Eighth Amendment rights pursuant to ***Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999 (1971)**.

The claim against Hughston is the only claim left pending. Plaintiff claims that Hughston retaliated against him by placing him in an extremely cold cell in the Special Housing Unit at FCI-Greenville.

### Standard for Summary Judgment

Summary judgment is appropriate under **Fed.R.Civ.P. 56** where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

-1-

entitled to judgment as a matter of law." **Fed.R.Civ.P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).** The evidence is construed in the light most favorable to the non-moving party and all justifiable inferences are drawn in favor of that party. **See, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14 (1986).** Once the moving party has produced evidence to show that he or she is entitled to summary judgment, the non-moving party must affirmatively demonstrate that a genuine issue of material fact remains for trial. *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996).

Even in the absence of a dispute as to the material facts, the moving party must demonstrate that it is entitled to judgment as a matter of law. "Thus, even where many or all of the material facts are undisputed, the court still must ascertain that judgment is proper 'as a matter of governing law.' [internal citations omitted]" ***Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994).**

Plaintiff is a *pro se* inmate, and his pleadings must be liberally construed. ***Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir.1981).**

## Analysis

Plaintiff's claim is that Hughston ordered him to be put in the end cells in the Special Housing Unit to retaliate against him for filing grievances.

Prison officials may not retaliate against inmates for exercising their First Amendment rights. An act that is otherwise permissible may violate an inmate's rights if it is done for the purpose of retaliating for the inmate's filing of grievances or lawsuits. ***DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000).**

The exhibits attached to defendant's motion and memorandum establish that Eady was assigned to FCI-Greenville from September 11, 2000, to September 10, 2001. Doc. 151, Ex. 1,

Attachment B. During that time, Hughston was a Captain at Greenville, with responsibility for security-related operations in various areas, including the Special Housing Unit (SHU). His affidavit is attached to Doc. 151 as Exhibit 4. He states therein that he was not involved in the daily operations of the SHU. Rather, the daily operations were handled by 3 to 4 correctional officers and a SHU Lieutenant. The SHU-assigned inmates were housed apart from general population for a variety of reasons; they included inmates in need of protection, inmates under investigation and inmates serving disciplinary sanctions. Hughston further states that the cell assignments of SHU inmates were rotated, but that decisions regarding where to assign a particular inmate were made by the SHU Lieutenant and officers working under him. Hughston denies that such decisions were made by him. He specifically denies that he ever ordered that Eady be placed in an end cell because the end cells were colder than the others.

The affidavit of S. Gregory is attached to Doc. 151 as Exhibit 5. At the relevant time, Gregory was the #1 Officer in the SHU at FCI-Greenville. His affidavit explains that the inmates in the SHU were rotated between cells at a maximum of 21 days. He states that, during the time he was in the SHU, Hughston was not involved in decisions about when to rotate SHU inmates or in what cell to place them. He specifically denies that he was ever told that Hughston had to approve the assignments, or that Hughston (or anyone else) ever instructed him to keep Eady in the end cells. He further states that he does not recall any problems with the temperature in the SHU, and the temperature is controlled by the facilities department and not by the SHU staff.

The are four ranges in the SHU, which are designated as Ranges A and B (disciplinary segregation) and C and D (Administrative Detention). The administrative detention ranges have twenty-four cells on each range. The odd numbered cells are on the right hand side of each

range (beginning with number 1), and the even numbered cells are on the left hand side of each range (beginning with number 2). Doc. 151, Ex. 3, ¶ 6. Thus, the allegedly cold cells in issue are cells 21 through 24 on Range C and cells 21 through 24 on Range D.

According to Eady's housing record, Doc. 151, Ex. 1, Attachment C, he was housed in the cells in question as follows:

> Range C, Cell 22: 12/21/00 to 1/3/01 (13 days)
> Range D, Cell 24: 1/25/01 to 2/16/01 (22 days)
> Range D, Cell 23: 2/16/01 to 3/16/01 (28 days) and 5/1/01 to 5/8/01 (7 days)
> Range D, Cell 21: 4/24/01 to 4/26/01 (2 days).

Eady's deposition is attached to Doc. 151 as Exhibit 2. Eady testified that he was in administrative detention in the SHU, and only the last two cells on either side of the administrative detention range were extremely cold. Ex. 2, pp. 46-50, 66.

Eady admitted in his deposition that he has no evidence that it was Hughston who decided to assign him to the end cells. He does not claim that Hughston ever made any statement to him that indicated a retaliatory motive. Ex. 2, pp. 61 - 62. He testified that, when he complained to SHU staff about being in a cold cell, some unidentified staff member told him that Hughston had to approve moving him. Ex. 2, pp. 54-55. This alleged statement by an unidentified staff member is not admissible to prove that Hughston, in fact, had to approve moving Eady. **Fed.R.Evid. 801, 802.**

Hughston is entitled to summary judgment on this record. Liability in a case brought under *Bivens* is personal. That means that a defendant is only liable where "personally involved in the deprivation of the plaintiff's constitutional rights." ***Gossmeyer v. McDonald*, 128 F.3d 481, 494-495 (7th Cir. 1997).**

On the record now before the court, it is clear that Hughston was not personally involved in deciding when to move plaintiff or where to put him in the SHU. Nothing in plaintiff's

response refutes this evidence or creates a genuine issue as to this fact.

## **Recommendation**

This Court recommends that Defendant Hughston's Motion for Summary Judgment **(Doc. 151)** be **GRANTED**.

If this recommendation is adopted, no claims will remain pending.

Objections to this Report and Recommendation must be filed on or before **March 17, 2008.**

**Submitted: February 29, 2008.**

**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**U. S. MAGISTRATE JUDGE**